Kenneth CRANDELL, Petitioner–
Appellant,

v.

Bill J. BUNNELL, Warden; Attorney
General of California, Respondents–
Appellees.

No. 92–55307.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 30, 1993.

Decided May 25, 1994.

John W. Poulos, Davis, CA, for petitioner-
appellant Kenneth Crandell.

David Glassman, Leslie P. McElroy, Depu-
ty Atty. Gen., Los Angeles, CA, for respon-
dents-appellees Bill J. Bunnell and Atty. Gen.
of California.

Before: BRUNETTI, KOZINSKI and
BOGGS,* Circuit Judges.

PER CURIAM; Dissent by Judge
BRUNETTI.

PER CURIAM.

Kenneth Crandell represented himself in
capital proceedings in California state court.
He was convicted of two counts of murder,
each with a special circumstance of multiple
murders, as well as kidnapping and assault
with intent to commit rape.[1]  Crandell
brought a federal habeas petition claiming
his state conviction was flawed by numerous
constitutional errors, each involving his right
to counsel and each demanding reversal.
The district court denied his petition; we
review de novo. *Zimmerlee v. Keeney,* 831
F.2d 183, 185 (9th Cir.1987).

Crandell claims he did not volun-
tarily waive his right to counsel and elect
self-representation in the municipal court
proceedings.  This is a mixed question of law
and fact which we review de novo. *United
States v. Robinson,* 913 F.2d 712, 714 (9th
Cir.1990).

On July 9, 1990, Crandell was arraigned in
municipal court and a public defender was
appointed to represent him.  A few weeks
later, Crandell appeared before the court
with counsel, and the court ordered his pre-
liminary hearing continued to October 20,
1980.  Crandell next appeared in court on
September 19—this time alone—to argue a
number of pro per motions he'd filed.  When

---

* The Honorable Danny J. Boggs, United States
Circuit Judge, United States Court of Appeals for
the Sixth Circuit, sitting by designation.

1. Although the jury fixed a penalty of death on
each murder conviction, the California Supreme
Court reversed the penalty phase judgment and
the state declined to prosecute further; Crandell
was thus sentenced to life imprisonment without
the possibility of parole.

the judge inquired as to why he was representing himself, Crandell explained that—despite numerous phone calls and letters to his appointed counsel—Crandell had not heard from him for almost two months. In fact, Crandell had been transferred to the "pro per" section of the jail and told this was because he didn't have a lawyer. 9/19/80 RT at 3–4.

Following a brief discussion with the judge, Crandell stated: "I do waive him as a legal representative of any kind because he has put up no defense at all for me, none whatsoever, won't even communicate with me." *Id.* at 4. Although the judge held a hearing a few days later to look into the matter—with the public defender present—neither the judge nor counsel addressed the two-month period when counsel had, apparently, done nothing.

We have held that "[a] criminal defendant may be asked to choose between waiver and another course of action so long as the choice presented to him is not constitutionally offensive." *Robinson,* 913 F.2d at 715 (quoting *United States v. Moya–Gomez,* 860 F.2d 706, 739 (7th Cir.1988)). In *Robinson,* as here, the defendant claimed his decision to proceed pro se was coerced because he faced an unconstitutional alternative: an appointed lawyer who was incompetent. In ruling on that claim, we implicitly accepted the premise that, had Robinson shown that his counsel was incompetent, his decision to go pro se would have been involuntary. We determined, however, that Robinson had alleged nothing amounting to attorney incompetence and hence was not entitled to an evidentiary hearing on the matter.

Our case is different. Crandell has alleged that, for two months following appointment, his lawyer did nothing at all to prepare a defense. Crandell raised this claim to the municipal court, but that court didn't rule whether such delay was within accepted limits of competence for attorneys in capital cases. He raised this point again in the district court below, but that court didn't conduct an evidentiary hearing to resolve the issue either.

We've determined Crandell has stated a viable claim. "[P]ersons accused of crime are 'entitled to the effective assistance ... of counsel' acting 'within the range of competence demanded of attorneys in criminal cases.'" *Cooper v. Fitzharris,* 586 F.2d 1325, 1330 (9th Cir.1978) (en banc) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). Failure to do anything at all during the first two months of representing a defendant in a capital case may or may not have fallen within this range. We note that this entire period transpired prior to the preliminary hearing, a proceeding that often serves as a discovery vehicle for the defense. Yet there is the possibility of prejudice from such inaction, as memories fade and evidence is lost or destroyed. The lawyer's delay might have been perfectly normal, or it might not. We're in no position to tell. We can only say that the two-month delay is unusual enough within our experience to raise doubts about the lawyer's competence.

Because Crandell could not have been forced to choose between incompetent counsel and no counsel at all, *see Lofton v. Procunier,* 487 F.2d 434, 436 (9th Cir.1973), we **REMAND** to the district court for an evidentiary hearing on whether Crandell's lawyer was competent at the time Crandell chose to refuse further representation and proceed pro se. As Crandell's other claims may be rendered moot by the district court's determination, we reserve them.

**REMANDED.**

BRUNETTI, Circuit Judge, dissenting:

Because I believe Crandell knowingly, intelligently, and voluntarily waived his right to counsel in the municipal court proceedings, I respectfully dissent. *See Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (criminal defendant has right to waive counsel and represent himself if he knowingly, intelligently, and voluntarily elects to do so).

The first requirement for a valid waiver of counsel is that the "request to forego the assistance of counsel must be unequivocal." *United States v. Robinson,* 913 F.2d 712, 714 (9th Cir.1990), *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1006, 112 L.Ed.2d 1089 (1991). A

defendant's statements are not equivocal simply because they are conditional. *See Adams v. Carroll,* 875 F.2d 1441, 1445 (9th Cir.1989) (defendant's repeated statements that he wanted to represent himself if the only alternative was the appointment of a certain attorney constituted a valid waiver, since although "his requests no doubt were *conditional,* they were not equivocal") (emphasis in original); *see also Robinson,* 913 F.2d at 714 (defendant's request to proceed pro se not equivocal because "some of [the defendant's] statements of his preference to proceed pro se were accompanied by expressions of his feeling 'forced' to do so").

We have the same situation in this case. Crandell repeatedly stated that he "prefer[red] to remain in pro per" and that he "waive[d] the Public Defender." The fact that Crandell made these statements after being informed by the court that it could not appoint co-counsel for him and that he could not select his own attorney did not render his statements equivocal. The court explained to Crandell the risks of proceeding pro se, especially in a capital case, and he responded that he understood. The only statement of the court that Crandell said he did not understand was the fact that the court had no power to appoint another lawyer, other than the Public Defender. Crandell then stated he "underst[oo]d what the court is saying, but [he] disagree[d] with [it]." Crandell's repeated statements and the discourse he had with the court on the disadvantages of self-representation show that his request to proceed pro se was unequivocal and was not thoughtless, a "mere whim or caprice," or the "result of thinking out loud." *See Robinson,* 913 F.2d at 714.

The second requirement is that "the defendant's waiver of the right to counsel must be made knowingly and intelligently; 'that is, a criminal defendant must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation.'" *Id.* (quoting *United States v. Balough,* 820 F.2d 1485, 1487 (9th Cir.1987)). In this case, the court engaged in a thorough discussion with Crandell about the disadvantages of pro se representation. In addition, the court specifically questioned Crandell on whether he could defend himself "knowing that this is a capital case and the People might put you to death in the gas chamber," and Crandell replied, "[y]es." Finally, the court made an explicit finding of a "knowing and intelligent waiver of counsel." *See Robinson,* 913 F.2d at 715 (influential in court's determination was "the fact that the district court made an express finding that [the defendant's] waiver was knowing and intelligent") (citing *United States v. Moya–Gomez,* 860 F.2d 706, 739 (7th Cir.1988) ("explicit finding by the district court, which had the opportunity to assess by its sustained observation the demeanor of the participants, is entitled to our deference"), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)). Thus, I believe, based on this record, that Crandell's waiver was knowing and intelligent.

Finally, a waiver of the right to counsel must be voluntary. *See Robinson,* 913 F.2d at 715. Crandell appears to argue that his waiver of counsel was involuntary because he was forced to choose between representing himself and an alleged incompetent appointed attorney, Public Defender Gordon ("Gordon").

The majority remands the case to the district court for an evidentiary hearing to determine whether Crandell's attorney was incompetent, which, if true, would have forced Crandell to choose between incompetent counsel and no counsel at all. The municipal court was not required to make a formal inquiry into the sources of Crandell's dissatisfaction with his appointed attorney, Gordon.

The majority finds that because Crandell alleged that for two months following appointment, before the preliminary hearing and before an information had even been filed against Crandell, Gordon did nothing at all to prepare a defense, the court was required to hold a hearing to determine whether Gordon was competent. Crandell's allegation that Gordon failed to communicate with him for two months before the scheduled preliminary hearing did not place a duty on the court to determine the competency of Gordon. The municipal court listened to Crandell's dissatisfaction with Gordon; however, in reality, Crandell's complaints

amounted to a request for the court to appoint the attorney of his choice, something to which Crandell was not entitled. *See id.* at 716 ("limitations on the range of a defendant's free choice with regard to appointed or retained counsel are not constitutionally offensive and do not render a subsequent election of pro se status involuntary"); *United States v. Padilla,* 819 F.2d 952, 956 (10th Cir.1987) (defendants have no absolute right to counsel of their choice). In addition, the fact that Crandell chose to represent himself only as an alternative to using the services of a particular public defender did not render his request to proceed pro se involuntary. *See Adams,* 875 F.2d at 1144–45 (defendant's request to proceed pro se unequivocal when he persisted in choosing to represent himself rather than rely on counsel whom he mistrusted).

While the majority distinguishes this case from *Robinson,* I believe, as in *Robinson,* Crandell has alleged nothing amounting to attorney incompetence, and he did not make a motion or request for substitute counsel. *See Robinson,* 913 F.2d at 716 ("We find no error in the district court's failure to make further inquiries into Robinson's complaints or, *sua sponte* to offer Robinson substitute counsel."). Crandell's allegations of dissatisfaction with his attorney were even less compelling than those of Robinson, since Crandell's requests came before his preliminary hearing, while Robinson's requests came while the jury was being selected for his trial.

Crandell's dissatisfaction with Gordon simply reveals a disagreement over tactics regarding plea bargaining and in no way suggests that Gordon was incompetent. The record shows that prior to the two-month period of inactivity, Gordon met with Crandell on three separate occasions to discuss the facts of the case and possible defenses, including the possibility of utilizing a diminished capacity defense. The record reflects that Gordon was prepared to try the preliminary hearing on the morning Crandell elected to represent himself and contradicted Crandell's claim of conflict of interest by stating that they had a disagreement over tactics. Crandell's complaints do not amount to an incompetency claim that would require the court to make a formal inquiry. As in *Robinson,* 913 F.2d at 716, Crandell could not have the court appoint him the attorney of his choice simply because he and his appointed counsel disagreed on tactics or strategy. His complaints regarding Gordon did not amount to an anticipatory ineffective assistance of counsel claim.

Crandell's request to proceed pro se was voluntary, and the constraints placed upon his choice to proceed pro se were constitutionally permissible. *See id.* at 715.

I would affirm the district court's denial of Crandell's petition.