

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0646-13

**IRVING MAGANA GARCIA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### HIDALGO COUNTY

ALCALA, J., filed a dissenting opinion in which JOHNSON and COCHRAN, JJ., joined.

### DISSENTING OPINION

The trial-court judge's single question asking whether Irving Magana Garcia, appellant, wanted a language interpreter was wholly inadequate to establish that he voluntarily waived his federal constitutional right to an interpreter whose assistance would have enabled him to understand the proceedings and confront the witnesses against him. *See* U.S. CONST. amends. VI, XIV. Although I concur with the majority opinion that, in an appropriate case, a record may be sufficient to show a knowing and voluntary waiver despite

the absence of a transcript of the actual statements at the time they transpired, I disagree that the record in this case adequately establishes that appellant's waiver of his right to an interpreter was voluntary. Accordingly, I would reverse the judgment of the court of appeals upholding appellant's conviction for second-degree murder and remand to the court of appeals for a harm analysis. *See Garcia v. State*, No. 13-11-00547-CR, 2013 Tex. App. LEXIS 2328, 2013 WL 865411, at *2 (Tex. App.—Corpus Christi Mar. 7, 2013) (mem. op., not designated for publication). I, therefore, respectfully dissent.

## I. Background

In 2011, a jury convicted appellant of murder, and he was sentenced to twenty years in prison and a fine of $10,000 after the jury determined, in the punishment phase, that he killed the complainant under the immediate influence of sudden passion arising from an adequate cause. *See* TEX. PENAL CODE § 19.02(a), (b), (d). At trial, appellant, who speaks and understands only Spanish, was represented by an attorney who was fluent in Spanish and English. No interpreter translated the proceedings into Spanish for appellant. Appellant, however, was able to understand testimony by seven of the twenty witnesses who testified in Spanish with an interpreter translating their testimony into English for the jury. Appellant also testified in his own defense, with his testimony being translated from Spanish into English by an interpreter. For the twelve witnesses who testified in English, counsel gave appellant "a very brief summary of what the witnesses said that was harmful to us."

After sentencing, appellant filed a motion for new trial asserting that he did not

knowingly and voluntarily waive his right to an interpreter. *See* TEX. CODE CRIM. PROC. art. 38.30. The trial court initially denied appellant's motion for new trial without a hearing. This became one of appellant's complaints in his brief on direct appeal, prompting an abatement by the court of appeals to allow appellant to introduce evidence at a new-trial hearing. *See Garcia,* 2013 WL 865411, at *2. On abatement, the trial court held an evidentiary hearing during which it heard testimony from appellant, appellant's trial counsel, and the State's attorney who prosecuted appellant at his jury trial. At the end of the hearing, the trial court denied the motion and made oral and written findings of fact and conclusions of law.[1]

As presented at the hearing on the motion for new trial, almost all of the facts pertinent to determining whether appellant knowingly and voluntarily waived his right to an interpreter are conclusively shown by the record. The record affirmatively shows that the trial judge and the attorneys all knew before trial that appellant could speak and understand only Spanish.[2] In an off-the-record discussion at the bench that occurred prior to the beginning of testimony, the judge asked counsel if appellant wanted an interpreter for the

---

[1]     After it denied appellant's motion for new trial, the trial court made six written findings of fact, four of which are discussed within the portion of this opinion to which they are pertinent. *See* TEX. R. APP. P. 21.8(b) (permitting court ruling on motion for new trial to make oral or written findings of fact). The two remaining findings are immaterial to resolution of this appeal. The first finding merely describes this claim as the "central claim in this motion for new trial," and the sixth finding addresses the other claims in the motion for new trial, stating that they have "no merit."

[2]     For example, at the start of appellant's arraignment, the record indicates that the trial judge asked appellant, "Do you understand English?" to which appellant answered, "No."

trial, and counsel said that appellant did not want one.[3] The bench discussion was not transcribed at that time. Later, at the motion-for-new-trial hearing, descriptions of this off-the-record discussion were conveyed by the testimony of those who were present at the bench when it occurred: the State's attorney, appellant's trial counsel, appellant, and the trial judge. The record before us shows that the trial judge did not make any inquiries beyond merely asking appellant's counsel if appellant wanted an interpreter. This single question and answer constituted the entirety of any discussions between the court and appellant with respect to whether appellant wanted an interpreter. At no time did the trial judge question appellant or his attorney about their reasons for declining an interpreter or about whether appellant's waiver of an interpreter was being made knowingly and voluntarily, and the trial court did not make any factual findings addressing whether appellant's waiver was made knowingly and voluntarily, although the court did determine that the waiver was made due

---

[3] The trial judge stated orally after the new-trial hearing that he recalled having talked to appellant and appellant's trial counsel "up here on the bench where we were talking and he said he didn't want one, so it's a waiver." The State's attorney also recalled a discussion with the trial judge at the bench, during which appellant's trial attorney told the judge that they did not want an interpreter. The State's attorney testified, "I think that it was an informal question by the Judge, are you going to want an interpreter? . . . I know that the Judge was informed that he wasn't going to need an interpreter." The State's attorney did not believe that the trial court had ever talked "at all" to appellant himself about whether he wanted an interpreter. Based on this evidence and the trial judge's own recollection, the judge's third and fourth findings state,

> 3. Based upon the credible testimony of [the State's attorney] . . . and this Court's recollection of the underlying proceedings, [appellant] waived his right to an interpreter during an unrecorded bench conference.

> 4. That it was based on this waiver that this Court determined that the appointment of an interpreter was not needed.

to trial strategy.

## II. Analysis

Although I agree with the majority opinion that a record of the parties' actual statements at the time they are made is not a procedural prerequisite to a finding that a waiver is shown in the record,[4] I disagree that this record shows that appellant executed a voluntary waiver of his federal constitutional right to have an interpreter. By asking merely a single question whether appellant wanted an interpreter, the trial judge failed to satisfy his burden to ascertain whether appellant's waiver was voluntary or whether it was rather the product of coercion. Furthermore, the record in this case conclusively shows that appellant was

---

[4]    In discussing how a *Marin* category-two right is waived, this Court has stated that this occurs "always on the record." *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993). As support for its holding, *Marin* cited to *Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992). *Goffney* explained that "[p]resuming waiver from a silent record is impermissible," and that the "record must show, or there must be an allegation and evidence which must show," that the offer of an implementation of a right was "intelligently and understandingly rejected." *Goffney*, 843 S.W.2d at 585 (citing *Carnley v. Cochran*, 369 U.S. 506, 516*,* 82 S. Ct. 884 (1962)). By referring to a category-two waiver as "always" occurring on the record, this Court suggested that there must be more than a silent record and that the record must affirmatively show that a waiver of a right was knowing and voluntary, but it did not signal that there must be a transcription of the actual statements documenting a waiver at the time they take place. This characterization of *Marin* is consistent with this Court's recent decision in *Davison v. State*, 405 S.W.3d. 682, 685-87 (Tex. Crim. App. 2013), in which we held that the record may be sufficient to establish waiver if it "otherwise affirmatively discloses" that a waiver was knowing and voluntary. I note, however, that as the Supreme Court pointed out approximately seventy-five years ago, "whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S. Ct. 1019 (1938). In light of the Supreme Court's position in *Johnson*, a trial court should ordinarily place on the record any waiver of a constitutional right by a defendant at the time the waiver takes place. *See id*. But in those rare cases in which such an on-the-record waiver is absent, other evidence in the record may suffice to show that a defendant knowingly and voluntarily waived his right to an interpreter. *See id*.

coerced by his attorney into declining an interpreter. Appellant assented to his attorney's suggestion that he decline an interpreter because counsel presented him with the untenable choice of moving forward either with (1) an interpreter and counsel being unable to concentrate, or (2) no interpreter and counsel being able to concentrate. This choice between implementation of one constitutional right, the right to confront witnesses, versus abridgement of another constitutional right, the right to effective assistance of trial counsel, renders the resulting choice involuntary.

**A. Any Waiver of An Interpreter Must Be Knowing and Voluntary**

"When a trial judge is aware that the defendant has a problem understanding the English language, the defendant's right to have an interpreter translate the trial proceedings into a language which the defendant understands is a category-two *Marin* right." *Garcia v. State*, 149 S.W.3d 135, 145 (Tex. Crim. App. 2004). *Marin* teaches that "our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigant which are to be implemented upon request." *Marin v. State*, 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993). For category-two *Marin* rights, a defendant "need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them" absent a knowing or voluntary waiver of that right. *Id*. at 280. Absent a knowing or voluntary waiver of the right to an interpreter, the trial court violates a defendant's federal constitutional right to confront the witnesses against him when the judge is aware that the defendant does not speak and understand English and fails to

appoint an interpreter for him. *See Garcia*, 149 S.W.3d at 144 ("[I]f the judge is aware of the defendant's language barrier, the judge has an independent duty to ensure that the proceedings are interpreted for the defendant, absent the defendant's knowing and intelligent waiver."). A defendant may choose to give up category-two waivable rights, but "he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently." *Marin*, 851 S.W.2d at 280.

**B. Record Fails to Establish that Appellant's Waiver Was Voluntary**

Assuming that the record supports a determination that appellant acted knowingly in that he was aware that he was giving up his right to have an interpreter, I would hold that it is inadequate to establish that he executed his waiver voluntarily.[5] I conclude that appellant's choice was involuntary because (1) it was the result of him being given two constitutionally offensive options; (2) the evidence of strategy was immaterial to whether the choice was involuntary; and, (3) excluding appellant's and counsel's testimony, the silent record was inadequate to establish that the choice was voluntary. I also note that (4) this Court should look to the best practices that have been implemented by federal courts for guidance as to how a defendant may effectively waive his right to an interpreter.

---

[5]     The trial court did not make any express finding that appellant acted knowingly in waiving his right to an interpreter. Although the record does show that appellant was aware of his right to an interpreter, I do not reach the question of whether his waiver was executed knowingly in the sense that it was made with sufficient awareness of both the relevant circumstances and likely consequences of waiving that right. *See Joseph v. State*, 309 S.W.3d 20, 27 (Tex. Crim. App. 2010) (stating, in context of waiver of *Miranda* rights, that relinquishment of rights must be made with sufficient "awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them").

**1. Choice Is Involuntary When Result Of Constitutionally Offensive Options**

This Court recently reaffirmed that federal "due process requires that '[w]aivers of constitutional rights not only must be done voluntarily but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463 (1970)). As appellant points out, in the context of a waiver of *Miranda* rights, the Supreme Court has explained that "the relinquishment of the [constitutional] right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135 (1986). "Only if the totality of the circumstances surrounding [the waiver] reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude" that a waiver has occurred. *Id*. (citations omitted).

Here, the trial court did not make any factual finding with respect to whether appellant's waiver was voluntary or whether it believed appellant and his counsel's testimony with respect to their reasons for declining an interpreter. The only evidence in the record with respect to appellant's and trial counsel's rationale for declining an interpreter was that counsel told appellant that having an interpreter would result in counsel being unable "to concentrate in defending" him because the interpreter was too distracting to counsel and the

jury.[6]  Not surprisingly, faced with the coercive choice of either having (1) an interpreter, which would cause his attorney to be unable to concentrate, or (2) no interpreter, which would allow his attorney to concentrate, appellant agreed with his attorney's suggestion that he proceed without an interpreter.  The Supreme Court has disapproved of this type of waiver that is made from the presentation of a coercive choice.  *See Fay v. Noia*, 372 U.S. 391, 399, 439–40, 83 S. Ct. 822 (1963) (habeas applicant's failure to appeal from conviction was not an intelligent and voluntary waiver given choice between life sentence or appeal with chance of death penalty on retrial), *overruled in part by Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497 (1977); *see also Moore v. Michigan*, 355 U.S. 155, 160–65, 78 S. Ct. 191 (1957);

---

[6]    Appellant testified at the hearing on the motion for new trial that trial counsel did not "recommend" an interpreter because "that would distract him and not let him concentrate very well."  The record shows the following:

| [State's attorney] | Did you agree—again, you agree[d] not to request an interpreter and you did not want one present? |
| [Appellant]: | Yes, because he told me that he was not going to be able to concentrate in defending me. |

Trial counsel similarly testified that having an interpreter would be too distracting for counsel.  The record shows the following:

| [Appellate counsel]: | So in your affidavit, . . . [you state that t]he "accused and I agreed not to ask for an interpreter."  What else goes in—in your and his decision-making to support that sentence? |
| [Trial counsel]: | Well, I just told him I didn't want an interpreter and he says whatever you want. |

Trial counsel further explained to appellant that he thought that an interpreter "would be very distracting for the jury" because the jury might be looking at appellant and the interpreter "as opposed to concentrating on the evidence in this case."  Trial counsel also thought that an interpreter would be distracting to counsel because appellant might be "asking the interpreter questions while [trial counsel was] trying to listen to answers, or thinking about the following question."

*Von Moltke v. Gillies*, 332 U.S. 708, 726, 68 S. Ct. 316 (1948). Federal and state courts similarly disapprove of waivers resulting from coercive choices that require a defendant to choose to give up one constitutional right in order to ensure that another is protected. *See, e.g.*, *Smith v. Grams*, 565 F.3d 1037, 1045–46 (7th Cir. 2009) (waiver of right to counsel held not voluntary and knowing where defendant terminated counsel and requested another attorney, but the trial court would allow delay and appointment only upon waiver of speedy trial right); *Padzen v. Maurer*, 424 F.3d 303, 319 (3d Cir. 2005) (holding waiver of counsel involuntary and stating that "choice between incompetent or unprepared counsel and appearing pro se is a dilemma of constitutional magnitude," and resulting choice to proceed pro se "cannot be voluntary in the constitutional sense when such a dilemma exists") (citations omitted); *United States v. Silkwood*, 893 F.2d 245, 248-49 (10th Cir. 1989) (waiver of right to counsel at sentencing not voluntary where trial court tried to dissuade discharge of counsel defendant believed incompetent; "for the waiver to be voluntary, the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel to ensure that the defendant is not exercising a choice between incompetent or unprepared counsel and appearing pro se"); *Beverly v. State*, 707 A.2d 91, 120–21 (Md. 1998) (defendant whose plea of guilty was improperly denied by trial court held not to waive issue on appeal after conviction because he was faced with coercive choice). In sum, a "clear choice between two alternative courses of action does not always permit a [defendant] to make a voluntary decision. If a choice presented . . . is constitutionally offensive, then the choice cannot be

voluntary." *Wilks v. Israel*, 627 F.2d 32, 35 (7th Cir. 1980) (citations omitted). Because appellant was presented with the constitutionally offensive choice between effective counsel and an interpreter, his waiver was coerced. *See Crandell v. Bunnell*, 25 F.3d 754, 755 (9th Cir. 1994) (stating that "[a] criminal defendant may be asked to choose between waiver and another course of action so long as the choice presented to him is not constitutionally offensive") (citations omitted).

**2. Evidence of Strategy Is Immaterial to Whether the Choice Was Voluntary**

It is true that the trial court made what it labeled as a finding of fact stating that there were "valid reasons, pertaining to trial strategy" to explain why appellant did not request an interpreter.[7] The trial court did not explain what evidence the court relied on to make that assessment, what the strategy may have been, or how that determination could resolve the question of whether appellant's decision was voluntary and not based on coercive information. I conclude that the trial court's determination that the decision to waive an interpreter was based on strategy is immaterial to the resolution of this appeal. Whether an attorney's action is a valid trial strategy is a legal determination pertinent to whether a defendant has established ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); *see Ex parte Ellis*, 233 S.W.3d 324, 336 (Tex.

---

[7] The trial court made two fact findings, numbers two and five, determining that appellant was "aware of his right to an interpreter and for valid reasons, pertaining to trial strategy, did not request an interpreter," and that counsel discussed with appellant his "right to an interpreter and had a valid strategy in recommending that they not seek the appointment of an interpreter." Although he did not expressly state whether he believed appellant's and counsel's testimony describing their reasons for declining an interpreter, the judge implicitly credited that testimony by deciding that it formed the basis of a valid trial strategy.

Crim. App. 2007). Because the issue presently before this court concerns the voluntariness of appellant's decision to waive his right to an interpreter, the trial court's ruling pertaining to the separate question of whether appellant's attorney's actions could be classified as strategy for purposes of a claim on ineffective assistance of counsel is immaterial.

Although it is not dispositive of the question before us in this appeal, I note here that at least one court has deemed trial counsel's purported strategy in declining the services of an interpreter to be unreasonable. *See Ling v. State*, 702 S.E.2d 881, 883 n.1 (Ga. 2010). In *Ling*, the Georgia Supreme Court rejected trial counsel's claimed strategy in failing to secure an interpreter for a non-English-speaking defendant "on the basis that he was concerned using an interpreter might cause the jury to grow impatient and did not want to draw too much attention to the fact that [the defendant] was not a native English speaker." *Id*. That Court stated that counsel's claimed strategy was "not professionally reasonable" when it was based on "speculative fears" of juror bias and when the record indicated that the defendant did not participate in the decision to waive an interpreter. *Id*. Here, although he participated in the decision to waive an interpreter, appellant was given only the constitutionally impermissible choice between having either an interpreter or an effective attorney, and the presentation of only these two choices can hardly be characterized as an objectively reasonable trial strategy. *See Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010) (counsel's strategy subject to review under objective standard of reasonableness). In any event, any determination about strategy is immaterial to the resolution of this appeal.

I conclude that the trial court's determination that the decision to waive an interpreter

was based on valid trial strategy does not answer the separate question of whether appellant's waiver was voluntary, which is the pertinent question for purposes of determining whether that waiver was valid. *Marin*, 851 S.W.2d at 280. Even if the decision could be considered strategic in the sense that appellant believed that it was in his best interest to agree with counsel's recommendation not to have an interpreter so that counsel would not be distracted, the decision was nevertheless involuntary because it was presented in the form of a coercive choice that unconstitutionally required appellant to give up one constitutional right in order to ensure that another would be protected.

**3. Silent Record Inadequate to Establish That Choice Was Voluntary**

Even if I were to assume that the trial court disbelieved appellant's and counsel's testimony describing this choice, all that would remain is a silent record with respect to whether appellant's waiver was voluntary and what appellant's reasons may have been for declining an interpreter. Without facts in the record to show that the waiver was voluntary, this Court should not presume that it was. *See Carnley v. Cochran*, 369 U.S. 506, 516, 82 S. Ct. 884 (1962) ("Presuming waiver from a silent record is impermissible."); *compare Briones v. State*, 595 S.W.2d 546, 547-48 (Tex. Crim. App. 1980) (determining that Briones intelligently and voluntarily waived his right to confrontation where his attorney also acted as his interpreter based on record that showed trial judge asked Briones many questions to ascertain whether his waiver was effective). If appellant's and counsel's testimony describing their reasons for declining an interpreter is discounted, then this silent record fails to demonstrate that appellant was admonished by either counsel or the trial court of his right

to have an interpreter and that he gave up this right voluntarily. *See Garcia*, 149 S.W.3d at 145. Absent that testimony, this silent record cannot support a determination that appellant's waiver was voluntary. *See Marin*, 851 S.W.2d at 280.

### 4. Federal Courts Provide Guidance on Best Practices

Although I might ordinarily look to factually similar federal case law for guidance as to what would constitute a voluntary waiver of the right to an interpreter, that matter is infrequently litigated in the federal courts because, pursuant to federal statute, a defendant may not waive his right to an interpreter unless certain procedural safeguards are met. *See* 28 U.S.C. § 1827(f)(1). Section 1827 specifies that a criminal defendant "who is entitled to interpretation . . . may waive such interpretation in whole or in part," but further stipulates that such a waiver

> shall be effective only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with counsel and after the presiding judicial officer has explained to such individual, utilizing the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise competent interpreter, the nature and effect of the waiver.

*Id*.

As the United States Court of Appeals for the Fifth Circuit has observed in interpreting the federal statutory requirements in this area, the "waiver of an interpreter is not a decision for [a defendant's] counsel or the Court to make. It is the defendant's decision, after the Court explains to him the nature and effect of a waiver." *United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir. 1980). That court has also observed that in "many cases,

counsel does not desire to have an interpreter sitting next to his client and may ask that one not be provided," in which case the trial judge should verify the validity of the waiver "before any waiver can be effective." *Id*.

To ensure that a defendant's federal right to confront the witnesses against him is protected, federal law has established strict requirements for waiving an interpreter, and such an approach would certainly appear to be the best practice for a state trial court. But adoption of that level of strict scrutiny is unnecessary to grant appellant relief in this case, where the trial court did not conduct any inquiry at all to determine whether appellant's waiver was voluntary.

### III. Conclusion

Although I agree with the State that a record may be adequate in rare cases to show a knowing and voluntary waiver of the right to an interpreter in the absence of a transcription of the actual statements by a defendant waiving that right, this record fails to establish that appellant's waiver was voluntary. The record conclusively shows that counsel did not want an interpreter for his own reasons and urged appellant to forego his right to an interpreter without fully explaining the nature of the right at stake and the possible consequences of waiving that right. The trial court then compounded the problem by failing to verify that appellant's waiver was being made freely and voluntarily, with an adequate awareness of his rights and the effect of the waiver. In light of these facts, I would hold that appellant's waiver was ineffective and that his federal constitutional right to confront the witnesses

against him was violated.  *See Davison*, 405 S.W.3d at 686; *see also Baltierra v. State*, 586 S.W.2d 553, 556–57 (Tex. Crim. App. 1979) (discussing right to interpreter under Confrontation Clause); *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986) (noting that "a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter").  On this basis, this Court should hold that appellant's constitutional rights were violated and remand to the court of appeals for a harm analysis using a constitutional-error standard of review.  *See* TEX. R. APP. P. 44.2(a).

Filed: April 9, 2014

Publish