

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00408-CR

JESUS RIVERA DAVILA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 5158, Honorable Stuart Messer, Presiding

November 17, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Jesus Rivera Davila, appeals from the trial court's judgment adjudicating him guilty of the felony offense of possession of a controlled substance,[1] revoking his deferred adjudication community supervision, and sentencing him to imprisonment for a period of 55 years in the Texas Department of Criminal Justice-Institutional Division. Through one issue, appellant contends his constitutional rights

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(f) (West 2014).

were violated when he was not provided an interpreter during an intake interview. We will affirm.

## Background

In March 2013, appellant was charged via indictment with possession of methamphetamine in an amount of 400 grams or more. He was represented by appointed counsel.

The court held a plea hearing on April 22, 2013. That same day, appellant signed, swore to and filed with the trial court an application for community supervision. The application contained a list of conditions of community supervision that appellant swore he would perform. The list included his agreement to "commit no offense against the laws of this State or of the United States," "report to the Community Supervision officer as directed, but at least once each thirty days," and "obey any other conditions imposed as a condition of community supervision."

Appellant pled guilty and the trial court placed him on deferred adjudication community supervision for a period of five years and imposed a $2000 fine. The court's order imposed conditions of community supervision that exceeded those listed in appellant's application, and contained the conditions that appellant commit no offense against the laws of Texas, any other State or the United States, report to his community supervision officer monthly and complete a total of 400 hours of community service, with 100 hours to be completed by October 1, 2013.

Below the judge's signature on the order appears the language:

2

> I hereby acknowledge that the conditions of Community Supervision have been explained and I fully understand them. I further acknowledge receipt of a copy of the conditions of my Community Supervision.

Appellant's dated signature and hand-printed name appear below that language, along with his thumbprint and a statement that the conditions were "explained by" a community supervision officer. One of the 100th Judicial District Community Supervision Officers, Mark White, signed the order indicating he explained the conditions to appellant.

The court signed an order of deferred adjudication the same day.

Appellant, a native of Puerto Rico living in Florida, was provided an interpreter during his plea hearing. However, he was not provided an interpreter for his intake interview with the 100th Judicial District Community Supervision Department, during which the conditions of his supervision were reviewed.

In March 2014, the State filed a motion to adjudicate guilt, alleging appellant committed several violations of community supervision. Among those allegations were that appellant possessed and used cocaine on more than one occasion, possessed drug paraphernalia, failed to report to his community supervision officer monthly by mail, and failed to complete the required community service.

In November 2014, the trial court held a hearing on the State's motion. An interpreter was present to assist appellant during the hearing. Appellant pled "not true" to the State's allegations. At the conclusion of the hearing, the State waived its allegations that appellant possessed and used cocaine. The trial court found appellant

possessed drug paraphernalia[2] and violated the reporting and community service terms. The court adjudicated appellant guilty of possession of methamphetamine, revoked his community supervision and sentenced him as noted. This appeal followed.

Analysis

Article 38.30 of the Texas Code of Criminal Procedure provides: "(a) When a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for the person charged or the witness . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.30 (West 2013); *see also Gonzalez v. State,* No. 03-01-00109-CR, 2001 Tex. App. LEXIS 8247, at *4-5 (Tex. App.—Austin Dec. 13, 2001, no pet.) (mem. op., not designated for publication) (citing *Baltierra v. State*, 586 S.W.2d 553, 557 (Tex. Crim. App. 1979)).

Appellant argues that the interview in which the conditions of his community supervision were explained to him was an extension of his plea hearing at which the court had determined he was entitled to the services of an interpreter, and his constitutional due process rights and rights to confront witnesses[3] were violated when the interpreter was not present to assist him at the interview.

Appellant does not cite us to authority supporting his premise that his interview with the community supervision officer was a part of his guilty-plea proceeding for

---

[2] Appellant entered a nolo contendere plea in Florida to the charge of possession of drug paraphernalia. The documentation relating to that plea was included in the "pen packet" offered to the court during the revocation proceeding.

[3] *See* U.S. CONST. AMENDS. XIV; VI.

purposes of article 38.30 and we do not here examine that premise. For even assuming its correctness, the issue appellant raises is not one we may consider on appeal of his judgment of conviction. It is the general rule that a defendant placed on deferred adjudication community supervision may not raise issues relating to the original plea proceeding for the first time on appeal of the revocation of community supervision. *Manuel v. State,* 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999) ("a defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding, such as evidentiary sufficiency, only in appeals taken when deferred adjudication community supervision is first imposed").

For purposes of the rule stated in *Manuel,* "issues relating to the original plea proceeding" may include claims of violations of the Code of Criminal Procedure and claims of constitutional violations. *See Nix v. State,* 65 S.W.3d 664, 666 (Tex. Crim. App. 2001); *Jordan v. State*, 54 S.W.3d 783 (Tex. Crim. App. 2001).

The prohibition of attacks on the original plea proceeding after revocation is subject to the void judgment exception. *Nix,* 65 S.W.3d at 666; *Jordan,* 54 S.W.3d at 785. But a judgment is void "only in very rare situations – usually due to a lack of jurisdiction." *Nix,* 65 S.W.3d at 668. Appellant does not argue his conviction is void, and we could not in any event sustain such an argument. An "involuntary plea" preceding deferred adjudication community supervision does not render the later judgment of conviction void. *Jordan,* 54 S.W.3d at 785 (*citing Custis v. United States,* 511 U.S. 485, 496, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994)).

5

If appellant did not understand the terms of his community supervision because he was not assisted by an interpreter at the interview, he had avenues under our state's laws to present the claim he now makes. *See Donovan v. State*, 68 S.W.3d 633 (Tex. Crim. App. 2002) (outlining avenues available for assertion of contention plea was involuntary because of defendant's ignorance of conditions of probation); *Manuel,* 994 S.W.2d at 661; *Swafford v. State,* No. 03-03-00344-CR, 2004 Tex. App. LEXIS 3739 (Tex. App.—Austin April 29, 2004, no pet.) (mem. op., not designated for publication) (defendant may challenge voluntariness of plea in appeal from order deferring adjudication). He may not, however, raise the claim in this appeal.

Moreover, if the court erred by failing to insure the interpreter accompanied appellant to the intake interview, the error is subject to analysis for harm.[4] "Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Cain v. State,* 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

We note first that, so far as the record shows, appellant has never contended he did not understand the conditions of his community supervision, and he does not make that contention on appeal. At the plea hearing, appellant was assisted both by counsel

---

[4] In *Marin v. State,* the court determined our criminal justice system "contains three distinct categories of rules: (1) absolute requirements and prohibitions, (2) rights that must be implemented unless expressly waived, and (3) rights that are to be implemented upon request." *Garcia v. State,* 429 S.W.3d 604, 606-607 (Tex. Crim. App. 2014) (citing *Marin v. State,* 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). If a trial court is aware that a defendant does not understand English, the right to an interpreter is a right falling under the second category. *Garcia v. State,* 149 S.W.3d 135, 145 (Tex. Crim. App. 2004).

and by an interpreter. The terms of his plea agreement made specific reference to the community service requirement, and the court made additional references during the course of his admonitions. After the court announced the deferred adjudication, he inquired of appellant whether its terms were "going to be something you will be able to complete," and received an affirmative response. And, as noted, appellant signed documents acknowledging the conditions of his community supervision. That appellant had an understanding of the community supervision requirements is further shown by evidence he performed some 67.5 hours of the required community service after his return to Florida.

At his revocation hearing, again assisted both by counsel and by an interpreter, there was testimony regarding the absence of an interpreter during appellant's intake interview, but appellant did not tell the court he did not understand the conditions of his community supervision. Three of his family members testified on punishment, and none of them so much as hinted appellant lacked an understanding of the conditions.

The two Texas officers who supervised appellant's probation testified at the revocation hearing. The officer who conducted the intake interview said an interpreter was available but he did not call for him because he did not believe an interpreter was needed. He told the court appellant did not request an interpreter and no notation on the intake form appeared indicating appellant required an interpreter. And, appellant indicated his understanding by "nodding his head or saying okay" as the officer outlined each condition. Appellant answered questions asking for his address, age and the names of persons living with him. The officer said he had no difficulty understanding appellant. The other officer testified she met with appellant before he left Texas for his

home in Florida. She told the court she did not need an interpreter while speaking with appellant.[5]

On the record before us, we would conclude beyond reasonable doubt that the absence of an interpreter at the intake interview did not contribute to appellant's conviction or punishment. *See* Tex. R. App. P. 44.2(a) (standard for constitutional violations).

We overrule appellant's issue on appeal, and affirm the trial court's judgment.

James T. Campbell
Justice

Quinn, C.J., concurs in the result.

Do not publish.

---

[5] We note "the mere fact that a defendant may be more fluent in another language does not require the appointment of an interpreter." *Martins v. State,* 52 S.W.3d 459, 470 (Tex. App.—Corpus Christi 2001, no pet.) (citing *Flores v. State,* 509 S.W.2d 580, 581 (Tex. Crim. App. 1974) and *Hernandez v. State,* 986 S.W.2d 817, 822 (Tex. App.—Austin 1999, no pet.)).